UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEKCO OPERATING COMPANY | CIVIL ACTION |
| VERSUS | NO. 04-3149 |
| ASPECT ENERGY, L.L.C. AND<br>AZIMUTH ENERGY L.L.C. | SECTION "T"(4) |

Before the Court is the Defendants' Motion for Partial Summary Judgment.  This matter was submitted for the Court's consideration, without oral argument, on April 26, 2006.   The Court, having reviewed the arguments of counsel, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

### ORDER AND REASONS

**I.     BACKGROUND**

In a June 20, 2004 letter, Hugh Aiken, President of SEKCO Operating Company stated: "...[M]y offer to sell SEKCO's interest in the field for $150,000 still stands." Subequently, Mike Tinker, a representative of Aspect Energy and Azimuth Energy, sent an email to Mr. Aiken.  In this email, Mr. Tinker stated:

> "You stated in your letter an offer to sell your interest at $150,000.  Azimuth proposes as an alternative to your ongoing efforts to reconcile the accounting issue such as costs and revenue payments, Azimuth purchase all of your rights and interests and claims to production in the Golden Meadow field will assume

all of your obligations for all periods for a purchase price of $100,000." [Defendants' Exhibit 1].

After this email, there was no response from SEKCO or Mr. Aiken regarding this email.  On July 8, 2004, Mr. Tinker made another offer.

The July 8, 2004 email stated:

> "Please note that Azimuth offered to purchase all of your interests as per my previous email that stated 'Azimuth offers to purchase all of SEKCO Operating Co' interests and claims to production in the Golden Meadow field and assume all of your obligations for all periods for a purchase price of $100,000.'  This offer still stands for a period of ten (10) days from todays date at which time it will expire." [Defendants' Exhibit 2].

On July 9, 2004, Mr. Aiken sent a reply email to Mr. Tinker stating:

> "I would like to sell my interest in the field.  Would you increase your offer to $125,000." [Defendants' Exhibit 3].

Mr. Tinker never responded to Mr. Aiken's July 9, 2004 email.

On July 18, 2004, Mr. Aiken sent another email to Mr. Tinker stating:

> "SEKCO Operating Company accepts your offer of $100,000 related to the Falgout and PN & P wells."

SEKCO filed this lawsuit seeking to enforce the alleged Purchase Contract between SEKCO and Aspect Energy/Azimuth Engergy because SEKCO claims that it validly and timely accepted the offer in Mr. Tinker's July 8, 2004 email.   Therefore, SEKCO is seeking specific performance of the Purchase Contract.  The Defendants filed this Motion for Partial Summary Judgment claiming that there was no Purchase Contract and thus, SEKCO's is not entitled to specific performance as a matter of law.

**II.    LAW OF SUMMARY JUDGMENT**

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  Stults v. Conoco, Inc., 76 F.3d 651, 655-56 (5th Cir. 1996) (citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912-13 (5th Cir.) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)).  When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis supplied); Tubacex, Inc. v. M/V RISAN, 45 F.3d 951, 954 (5th Cir. 1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."  Matsushita Elec. Indus. Co., 475 U.S. at 588.  Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III.    DEFENDANT'S ARGUMENTS IN SUPPORT

The Defendants argue that July 8, 2004 email contained an offer to purchase Mr. Aiken's

interests for $100,000 and that offer was extinguished by Mr. Aiken's counteroffer in his July 9, 2004, which contemplated a purchase price of $125,000.  Therefore, Mr. Aiken's July 18, 2004 email reiterating Mr. Tinker's July 8, 2004 offer of $100,000 was not an acceptance because the $100,000 offer was rejected on July 9, 2004 by a counteroffer.   Further, the July 18, 2004 email constituted another counteroffer and not an acceptance.  The Defendants, thus, argue that there was no longer an offer, so acceptance was impossible on July 18, 2004 and so there is no contract or legally binding agreement.

Additionally, the Defendants contend that the alleged acceptance on July 18, 2004 did not conform to the original offers made in Exhibit 1 and the July 8, 2004 email because the Defendants were attempting to buy all of SEKCO's interests and claims to production in the Golden Meadow Field and Mr. Aiken's alleged acceptance only included SEKCO's interests "related to the Falgout and PN&P wells."  Therefore, because the alleged acceptance did not conform to the original offer, Mr. Aiken July 18, 2004 email constituted another counteroffer. The Defendants claim that at the time of their offer they knew that SEKCO had interests in the Golden Meadow Field that exceeded the interest SEKCO had in the PN&P and Falgout wells. [Defendants' Exhibit A].  The Defendants also claim that they knew that SEKCO's interest in the Falgout and PN&P wells was alone worth far less than $100,000.  Finally, because SEKCO never responded to or accepted SEKCO's July 18, 2004 counteroffer, there is no purchase contract and thus, SEKCO has no claim for specific performance.

IV.     **PLAINTIFF'S ARGUMENTS IN OPPOSITION**

The Plaintiff argues that the documents relied upon by the Defendants' in their Partial

Motion for Summary Judgment create a genuine issue of material fact as to what Azimuth was offering to purchase for $100,000.  In other words, the emails between Mr. Tinker and Mr. Aiken create an issue of fact as to the subject matter of the alleged contract.   The Plaintiff claims that the July 9, 2004 email from Mr. Aiken [Defendants' Exhibit 3], "includes the offer from Mike Tinker, a Azimuth consultant, wherein Mr. Tinker references only the PN&P 1 and Falgout 1D wells and accounting discrepancies related to SEKCO's working interest in *those* wells."[1]

Further, this email reiterates Azimuth's previous offer to purchase SEKCO's interests for $100,000.  Plaintiff contends that this was a "reiteration of a counter–offer to an initial offer by SEKCO to sell its interests for $150,000."  [See Defendant's Exhibit 1].  Plaintiff states that in response to that offer Mr. Tinker suggested in the "Azimuth proposes as an alternative to your ongoing efforts to reconcile the accounting issues such as costs and revenue payment, Azimuth purchase all your rights and interest and claims to production in the Golden Meadow Field will assume all of your obligations for all periods for a purchase price of $100,000."

The Plaintiff argues that SEKCO accepted the offer from Aspect/Azimuth "as to the two wells where there were accounting issues, PN & P 1 and Falgout."  [See Defendant's Exhibit 4]. The Plaintiff contends that the negotiations for sale of SEKCO's interest were limited to SEKCO's holdings to which there were "accounting issues," which only include the PN&P 1 and Falgout 1D holdings, and not the entirety of SEKCO's holding in the Golden Meadow Field.

---

[1] The Court notes that the Plaintiff is referring to the bottom half of Exhibit 3, which is identical to the bottom half of Exhibit 2, which is the July 8, 2004 email from Mr. Tinker to Mr. Aiken.

Finally, the Plaintiff contends that Mr. Aiken's July 9, 2004 email, which stated "would you increase your offer to $125,000," was "simply not a counteroffer," but rather a "question as to Azimuth's willingness to increase its previous offer." Therefore, SEKCO properly accepted Azimuth's July 8, 2004 as to the PN&P 1 and Falgout 1D holding, within the time day period and thus, a binding contract was confected.

In summary, the Plaintiff is arguing that the subject matter of the offer was limited to only the PN&P 1 and the Falgout 1D holdings and the contract was properly accepted on Mr. Aiken's July 18, 2004 email because the Azimuth's offer was not terminated by a counteroffer in Mr. Aiken's July 9, 2004 email.

**V.     LAW AND COURT'S ANALYSIS**

Because this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, the Court must apply Louisiana law to determine whether a contract was properly formed between the parties to this action. Under Louisiana law, four elements are necessary for the confectioon of a valid contract: (1) capacity to contract; (2) mutual consent; (3) a certain object; and (4) a lawful cause. La. Civ. Code arts. 1918, 1927, 1966, 1971 and 2029. Additionally, because this is a contract of sale, the Louisiana Civil Code requires that there be (1) a thing; (2) a price; and (3) the consent of all parties. La. Civ. Code art. 2439. Louisiana Civil Code art. 1927 states that a contract is formed by a meeting of the minds and the mutual consent of the parties that is established through offer and acceptance.

A party claiming the existence of a contract has the burden of proving that the contract was perfected. Enterprise Property Grocery, Inc. v. Selma, Inc., 38,747 (La. App. 2 Cir.

9/22/04), 882 So.2d 652 (citing Pennington Construction, Inc. v. R A Eagle Corp., 94-0575 (La. App. 1 Cir. 3/3/95, 652 So.2d 637.  In order for a contract to be formed, an acceptance must conform with the offer.  An acceptance not in accordance with the terms of the offer is deemed a counteroffer.  La. Civ. Code art. 1943.  A modification in the acceptance of an offer constitutes a new offer which must be accepted in order to become a binding contract.  Autin-Germany v. Germany,  00-1924 (La. App. 5 Cir. 4/11/2001), 789 So.2d 608; Rodrigue v. Gebhardt, 416 So.2d 160, 1661 (La. App. 4 Cir. 1982).

There are two main issues raised in this Motion for Partial Summary Judgment.  First, did SEKCO properly accept the Defendants' July 8, 2006 offer and secondly, did the object of the alleged contract actually include all of SEKCO's interests in the Golden Measow Field or just the Falgout ID and PN&P 1 wells.

The Court will first address whether there was mutual consent between the parties as evidenced by an offer and an acceptance.  In the June 20, 2004 letter, Mr. Aiken reiterated an offer to sell his interest in the field for $150,000.  Thereafter, in an email [Defendant's Exhibit 1], Mr. Tinker responded by offering to buy Mr. Aiken's interests for $100,000.  This "offer" by Mr. Tinker constituted a counteroffer because it did not conform with the original June 20, 2004 offer and at this point, Mr. Aiken could accept this $100,000 counteroffer.  However, Mr. Aiken did not respond to this counteroffer and on July 8, 2004, Mr. Tinker reiterated the offer to buy Mr. Aiken's interests and gave Mr. Aiken ten days to accept the offer.  Therefore, Mr. Tinker's July 8, 2004 offer was an irrevocable offer for ten days.  An irrevocable offer is an offer that specifies a period of time for acceptance and is irrevocable during that time period. La. Civ.

Code 1928. However, a counteroffer has the "effect of negating any offer." Kellogg v. Kellogg, 36,374 (La. App. 2 Cir. 9/18/02), 827 So.2d 1178, 1180. *See* also Sweet v. Iberia Parish Schood Board, et al., 99-483 (La. A99. 3 Cir. 11/3/99), 746 So.2d 256 (finding that once a counteroffer was transmitted, the original offer was at an end and the original offeror was not compelled to await a belated assent). Thus, once Mr. Tinker made the July 8, 2004 offer to Mr. Aiken, Mr. Aiken could have accepted the offer, made a counteroffer, which would terminate the original July 8, 2004 offer, or rejected the original offer.

On July 9, 2004, Mr. Aiken responded in an email to Mr. Tinker stating "I would like to sell my interest in the field. Would you increase your offer to $125,000?"[2] The Court finds that the July 9, 2004 email constituted a counteroffer for Mr. Tinker to sell his interests for $125,000. Because the Court finds that this was a counteroffer, at this point, a contract for the sale of these interests could only have been confected if Mr. Tinker had accepted the counteroffer because the counteroffer negated the original July 8, 2004 offer. And thus, the alleged acceptance by Mr. Aiken on July 18, 2004 does not constitute a valid acceptance because after the counteroffer was made on July 9, 2004, there was no longer an offer for Mr. Aiken to accept. Therefore, because the Court finds that there was not consent evidenced by an offer and an acceptance, there is no contract between these parties and the Plaintiff does not have a claim for specific performance.

---

[2] The Plaintiff argues that the statement made by Mr. Aiken in his July 9, 2004 email was "simply not a counteroffer but rather a question as to Azimuth's willingness to increase its previous offer." Mr. Aiken's statement is by definition a counteroffer because it purports to accept the offer, but then goes on to change the terms of the original offer by requesting that the price term be increased. Therefore, this statement was a counteroffer because it was "an acceptance not in accordance with the terms of the offer...." La. Civ. Code art. 1943.

Additionally, even if the Court found that Mr. Aiken's July 9, 2004 email was not a counteroffer and Mr. Aiken could have still accepted Mr. Tinker's July 8, 2004 offer, the Court finds that the July 18, 2004 email also constitutes a counteroffer. In Mr. Tinker's offers [Defendants' Exhibit 1 and Exhibit 2], Mr. Tinker offered to purchase "all of your rights and interests and claims to production in the Golden Meadow field...for a purchase price of $100,000" and "Azimuth offers to purchase all of SEKCO Operating Co' interests and claims to production in the Golden Meadow field and assume all of your obligations for all periods for a purchase price of $100,000." In response to these offers, Mr. Aiken responded stating "SEKCO Operating Company accepts your offer of $100,000 related to the Falgout and PN&P wells."

It is clear from Mr. Tinker's offers that Azimuth intended to acquire "all" of Mr. Aiken's interests in the Golden Meadow Field and not just the Falgout and PN&P wells. Because Mr. Aiken's attempt to accept the Defendants' offers does not conform with the original offers, it also is deemed a counteroffer. Because the Defendants never accepted this counteroffer, there was no valid contract formed between these two parties.

The Court has determined that the undisputed facts[3] establish that there was never mutual consent of the parties and thus, there was never a properly confected contract and as a matter of

---

[3]   The Plaintiff argues that there are genuine issues of material facts, as to what interests were the subject matter of this contract negotiations. The Court finds that it is undisputed that the Defendants were attempting to buy "all" of Mr. Aiken's interests and Mr. Aiken only offered to sell his interests in the PN&P and Falgout wells to the Defendants' in his July 18, 2004 email. The Court finds these differing intentions are only grounds for proving that there was no mutual consent of the parties (and no contract) and not proof that there are genuine issues of fact to preclude the Court from granting the Defendants' Motion for Partial Summary Judgment.

law, the Plaintiff cannot make a claim for specific performance.

**IT IS ORDERED** that the Defendants' Motion for Partial Summary Judgment is hereby **GRANTED**.

New Orleans, Louisiana, this 9th day of May, 2006.

_____
**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**